UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ROBERT CROSBY, JR.

                                        Plaintiff,

                    v.

STEW LEONARD'S OF YONKERS, LLC,                    VERIFIED
STEW LEONARD OF NORWALK, LLC AND                  COMPLAINT
STEW LEONARD JR, Individually,

                                Defendants.

-------------------------------------------------------------------x

Hertz Legal, P.C. Karen Mizrahi (KM1730) 503 Half Moon Bay Drive, Croton on Hudson, NY
10520, (914-393-6971) karen@hertzlegal.com for Plaintiff.

-------------------------------------------------------------------------------------------------

**PLAINTIFF DEMANDS TRIAL BY JURY**

Robert Crosby, Jr. ("Crosby") by his attorneys, HERTZ LEGAL, P.C., hereby complains of the

Defendants as follows:

**PRELIMINARY STATEMENT**

1.  This action is brought to remedy Defendants' Stew Leonard's of Yonkers. LLC., Stew

    Leonard's of Norwalk LLC, and Stew Leonard Jr's discrimination and retaliation in the

    terms, conditions and privileges of employment based on the disability, race, sex and age

    of Crosby in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. Sec.

    1201, et. seq ( the "ADA");), Title VII of the Civil Rights Act of 1964, as codified, 42

    U.S.C. 2000, et. seq. ("Title VII"), the Age Discrimination in Employment Act

("ADEA"), 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, Executive Law Sec. 290, et. seq. (the "NYSHRL"), and interference and retaliation in violation of the Family Medical Leave Act 29 U.S.C. Sec 2601, et. seq (the "FMLA") In addition, Plaintiff brings this action to recover unpaid wages owed to him pursuant to both the Fair Labor Standards Act ("FLSA") ,29 U.S.C. §§ 201 et seq. and the New York Labor Law ("NYLL"), §§ 650 et seq. for failure to pay him for unused vacation time

2. During the course of his employment Crosby repeatedly complained that Defendants' working environment was discriminatory and unsafe, exposing Mr. Crosby and his co-workers to COVID-19 and to repeated harms. As part of this discriminatory and unsafe environment, Mr. Crosby became infected by COVID-19 at Defendants' workplace, and suffered tremendously, becoming disabled. Rather than accommodate Mr. Crosby – a long-time and dedicated employee and father of four – to allow him to recover and return to work, Defendants fired him because he was disabled, for exercising his legal rights, including his rights to request and utilize leave, his right to seek and obtain an accommodation, and for complaining about his unsafe working environment.

3. In addition, Crosby complains of systemic racial, sexual, religious and ageist discriminatory practices by the Defendants to which Plaintiff verbally opposed over the course of his 20 years of employment by Stew Leonard's of Yonkers, LLC and Stew Leonard's of Norwalk, LLC and Stew Leonard Jr. creating a hostile work environment.

4. Mr. Crosby seeks damages to redress the injuries he suffered as a result of Defendants unlawful actions, including Defendants discriminating against him on the basis of his actual and/or perceived disability, retaliating against him against for seeking a reasonable

accommodation and complaining about his mistreatment as a disabled employee, and for exercising and interfering with his rights to take leave.

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over this action under 28 U.S.C. §1331 as Crosby asserts violations of various federal statutes, including Section 1981, Title VII, the ADA, the ADEA, and the FMLA.

6.  The Court also has supplemental jurisdiction over the claims of Plaintiff asserts under the NYSHRL under 28. U.S.C. §1367.

7.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.  Venue is proper in this district under 28 U.S.C. §1391(b) because the unlawful employment practices complained of herein occurred within the Southern District of New York, including Plaintiff's employment location at One Stew Leonard Drive, Yonkers, New York, 10710

## PROCEDURAL PREREQUISITES

9. On June 1, 2021, Plaintiff duly filed a charge of discrimination upon which this complaint is based with the New York State Division of Human Rights, (NYSDHR). The charge was also dual filed with the Equal Employment Opportunity Commission ("EEOC").

10. On November 30, 2021, Plaintiff received a Notice of Probable Cause Finding from the NYSDHR. A copy of said notice is annexed hereto as Exhibit 1" to this Complaint. On December 8, 2021, Plaintiff requested an administrative dismissal of the matter before the NYSDHR for convenience to pursue the matter in federal court. A copy of the dismissal letter is annexed hereto as Exhibit" 2" Plaintiff's claim was timely filed with the New York State Division of Human Rights pursuant to New York State Human Rights Law Section 290, et. seq.

11. On March 28. 2022, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC.") A copy is annexed hereto as Exhibit "3."

12. This action is being commenced within the 90 days of said receipt of the EEOC Notice of Right to Sue.

## PARTIES

13. Plaintiff Crosby is a resident of the State of New York, County of Orange.

14. At all times material, defendant STEW LEONARD'S OF YONKERS, LLC ("YONKERS") was a domestic, for-profit corporation organized and existing under the laws of the State of New York, owning and operating a 120,000 square-foot grocery store located at 1 Stew Leonard's Drive, Yonkers, New York 10710, which boasts of being a farm-fresh, family friendly place to work and to shop.

15. At all times material, Defendant STEW LEONARD'S OF NORWALK, LLC ("NORWALK") was a foreign corporation organized and existing under the laws of the state of Connecticut with a principal place of business located at 100 Westport Avenue, Norwalk, CT 06851 and is the parent corporation of defendant STEW LEONARD'S OF YONKERS, LLC.

16. At all times material, Defendant STEW LEONARD JR. ("LEONARD JR.") was or is a resident of the State of Connecticut, residing at 5 Surf Road, Westport, CT 06880 and is the Chief Executive Officer ("CEO") of defendants YONKERS and NORWALK.

17. At all times material, Plaintiff CROSBY was an employee of Defendants YONKERS and NORWALK holding the title of "Loss Prevention Manager" of the Yonkers Facility.

18. Plaintiff CROSBY is a white male, age 56 at the time of his termination.

19. That at all times material, Defendant LEONARD JR. held supervisory authority over Plaintiff CROSBY, and had the authority to discipline, hire, fire, affect and/or influence the terms and conditions of Plaintiff's employment. . During the course of Plaintiff's employment, when Leonard Jr. was in the Yonkers facility, he would direct Crosby with specific tasks.

20. Upon information and belief, at all times relevant hereto, Defendants YONKERS and NORWALK were joint employers of Plaintiff CROSBY. The Defendants were empowered to hire, discipline, supervise, and/or terminate Plaintiff, as well as to set the terms and conditions of his employment and to promulgate work rules and assignments governing Plaintiff's employment. Day to day operations were directed from Yonkers, while policies, procedures, payroll and insurance came from Norwalk.

21. Defendant LEONARD JR. controlled the means and manner of Plaintiff's performance by determining assigning and modifying his post and day to day responsibilities. Defendant LEONARD JR exercised direct control over Plaintiff in setting the length of his shift, whom he reported to, under whose supervision he would be and had the authority to discipline, hire or fire and/or recommend discipline, hire or fire.

22. At all times material, Defendant LEONARD JR., Defendant YONKERS and Defendant NORWALK are jointly referred to as "Defendants."

## MATERIAL FACTS

### Plaintiff Consistently Reports to a Hostile Working Environment

23. On or around February of 2001 – more than 20 years ago – Plaintiff CROSBY began his employment with Defendants.

24. Defendants employed CROSBY as a "Loss Prevention Manager at the Yonkers Facility and, as of his termination in September 2021, he was earning $97,359.78 per year.

25. At all times relevant, over the course of his 20-year career at Defendants, Plaintiff CROSBY was an exemplary employee who often went above and beyond his duties time and time again.

26. For example, during the course of his employment, Plaintiff saved the lives of five people, four customers and one team member who encountered life-threatening issues while shopping at Stew Leonard's of Yonkers. In 2002, Plaintiff removed a child from a burning car who was seat belted stuck into the burning car; in 2010 Plaintiff performed the Heimlich maneuver on an elderly customer who was choking at "Stew's Hoe Down". In 2011 Plaintiff lead a team of customers to lift a car off of a customer who was pinned under it and performed CPR. In 2014, Plaintiff performed CPR on a customer who was having a seizure and a heart attack, and in 2015, Plaintiff performed the Heimlich maneuver on a co-worker Louisa Rodriguez who was choking on a foreign object.

27. Upon information and belief, Defendants Stew Leonard's of Yonkers prides itself as a farm-fresh, family friendly place to work and shop. On its website Stew Leonard's describes itself as follows:

*"Stew Leonard's began as a small dairy store founded in 1969 with just seven employees. Today, Stew Leonard's is still family-owned and operated, but has grown to become a nearly $400 million dollar business with more than 2,500 employees. The company has received worldwide acclaim for excellence in customer service and quality and was selected to FORTUNE magazine's "100 Best Companies to Work for in America" list for ten consecutive years*

Under the "Work at Stews" tab on its website Defendant's claim **"** ***Stew Leonard's prides itself on not only being concerned about the wellness of its team members at work, but also outside of work.*** *Offering a variety of activities, resources, classes, and programs to improve the lives of their team members and their families. There is something for everyone!......, Stew Leonard's is*

*always thinking up creative ways to keep the team MOOVING and healthy financially, mentally, socially, and physically."*

28. From the onset of his employment until his termination however, this was not the Plaintiff's experience. Defendants repeatedly mistreated, ignored, threatened, bullied and discriminated against CROSBY despite his dedication and heroism to the Defendants and their customers.

29. From the onset of his employment until his termination, CROSBY and his co-workers were subjected to a workplace environment that was hostile and toxic.

30. During the course of Plaintiff's employment, Plaintiff witnessed Defendant Leonard Jr. regularly characterize young African American male employees as "Thugs."

31. During the course of Plaintiff's employment, Plaintiff witnessed Defendant Leonard Jr. make repeated references to an African American male employee named Henry as Big Black Henry and make comments about his "big black d*ck" and "all the white women he gets."

32. During the course of Plaintiff's employment, he witnessed Defendant Leonard, Jr. make repeated comments about an African American female employee and her "big black lips."

33. During the course of Plaintiff's employment, he witnessed Defendant Leonard Jr. make repeated references to two white male Jewish employees as his "resident Jews."

34. During the course of his employment Plaintiff witnessed the Defendant Leonard Jr. make repeated statements that Jews were the "worst customers to deal with" and referenced a particular employee as "his Jew boy."

35. On or about December 2012, Plaintiff witnessed the Defendant Leonard Jr. jokingly disseminate to Steve Dampf, a Jewish employee, whom Leonard Jr. referred to as his "Jew Boy" and "Resident Jew Yonkers" a racist and antisemitic video about entitled "Hannukah Song, Hood Style" featuring African American and Hispanic men sarcastically "celebrating" the Jewish holiday of Hannukah.

36. During the course of his employment, Plaintiff witnessed the Defendant Leonard Jr. repeatedly refer to women as "bitches."

37. At a Christmas party in the early 2000s, Defendant Leonard Jr. insisted that upper management wear sexually suggestive and inappropriate attire, including fake breasts, lingerie, sex toys and present a sexually suggestive and offensive skit. In attendance and jokingly participating in the skit were upper management Jill Leonard Tavello, Executive VP of Culture and Communications and sister of Defendant Leonard Jr., Beth Leonard Hollis, Executive Vice President and sister of Defendant Leonard, Jr. Owner Defendant Stew Leonard, and his wife Kim Leonard, owner Stew Leonard Sr, and his wife Maryann Leonard.

38. At that party, Plaintiff witnessed Ellen Story, Head of Human Resources and other members of Human Resources dressed in "Pimp" outfits participating in a skit wearing fake breasts. At that party Plaintiff witnessed defendant Leonard Jr. and other male upper management dressed as female prostitutes.

39. Upon information and belief, on or about 2009, Defendant Leonard Jr. and Tom Arthur, Store President and the cousin of defendant Leonard Jr. disseminated photographs of Leonard 's wife topless and random topless women on a beach. Also in the photograph was Tom Leonard , brother of defendant Leonard Jr.

40. On or about March 11, 2020, Plaintiff heard Defendant Leonard Jr. say to Crosby and other coworkers while following an attractive female customer out of the store "I don't know how you guys do it working with these hot bitches all day, I'd blow my load."

41. On March 18, 2020, Defendant Leonard Jr. told the Plaintiff, referring to an African American employee to, "Tell that nigger to pull up his pants or get rid of him".

42. Plaintiff repeatedly opposed Defendant Leonard Jr's discriminatory practices by complaining to Ellen Story, the head of Human Resources that he opposed Defendant's offensive behavior but was continually told by HR's Ellen Story, "*Stew's just being Stew*." and "*he means no harm; he has no filter.*" as if that was an acceptable response, albeit from the head of Human Resources.

43. Upon information and belief, others also opposed and complained about Defendants discriminatory conduct, including Doug Goodman, Steve Dampf, Taihili Boyako, John Russel and Henry Gordon.

44. Over the course of his career, spanning nearly 20 years, the Plaintiff repeatedly opposed Defendant Leonard Jr's discriminatory practices and complained about Yonkers' failure to maintain a safe work environment.

45. Defendants not only ignored all of CROSBY'S complaints, but its unlawful conduct continued, and they threatened CROSBY with disciplinary action, including the termination of his employment. Furthermore, in or about 2011, Defendants began to exclude Crosby from management-wide emails, thereby taking disciplinary and retaliatory action against him.

46. On or about May 2004, up to an including 2009, while Plaintiff and co-workers were lawfully on the premises which were, upon information and belief, leased by Defendants

Yonkers and Norwalk located adjacent to the Yonkers facility, they discovered tombstones which were later determined to be from an Orthodox Jewish cemetery located on the leased premises. Upon notifying the then Store President Tom Arthur of the discovery of the tombstone, Plaintiff and his coworkers were directed by store president to "*bury them where no one can find them*." Arthur further stated, "*No-one can find out about this, or you will lose your jobs.*"

47. In 2009, Plaintiff and coworkers were once again lawfully on the leased premises adjacent to the Yonkers facility, investigating a fire. While they were investigating the brush to determine the cause of the fire, Plaintiff and co-workers discovered human bones. They immediately notified the Store President and were told to "get coffee burlap bags and discard the bones in the dumpster." Defendant Leonard Jr. jokingly referred to the discovery of human remains and tombstones, which were determined to be the remains of an Orthodox Jewish Cemetery, as "***The Yonkers Holocaust***."

48. Plaintiff complained about desecrating the cemetery and discarding the bones to Defendants, and in turn they threatened CROSBY that if he disclosed this information to third parties, they would fire him. On July 7, 2004, the New York Times, as well as various national and local media, covered the story. All media coverage confirmed that there were over 100 bodies/remains missing from the original cemetery. As a result, Plaintiff began to suffer from emotional distress, anxiety and Post-Traumatic Stress Disorder (PTSD.)

**Plaintiff Becomes Infected With COVID-19 After**

**Defendants Fail to Respond to His Complaints About an Unsafe Working Environment.**

49. On or about March 5, 2020, at the onset of the COVID-19 pandemic, Plaintiff had become increasingly concerned about the lack of Personal Protective Equipment (PPE) available at Stew Leonard's of Yonkers and complained at a manager's meeting. He also complained that\ upon information and belief a co-worker had been in close contact with another individual who had been exposed to COVID-19, but that the Defendants had not taken any steps to quarantine this employee.

50. Throughout March 2020, Plaintiff continued to complain to management and HR that Defendants were not permitting social distancing, team members were not permitted to wear protective masks, the store was not limiting the number of customers in the store at one time, that the store was not being cleaned under CDC standards, that the store was not providing sufficient protective and cleaning equipment, that Defendants were not cleaning the stores properly, and that air filters needed to be changed.

51. Defendants likewise ignored his complaints as it had ignored his other complaints about the discriminatory working environment.

52. For example, on or about March 18, 2020, Defendant Leonard Jr. the owner stated during a managers' Zoom meeting that the employees should not socially distance from each other or customers or wear PPE. More specifically, Defendant Leonard stated, "*We gotta be careful here with like we can't say we have to keep six feet away if you are on the floor because we have a business to run here, and you can't do that in a store… we have to service our customers which is what is putting our paychecks in our pockets*."

53. Defendants then continued to insist team members ride in the company van together on a daily basis, unmasked. At that same meeting, Plaintiff heard the Defendant Leonard Jr.

state in reference to the employees "*We will hold their job, if someone wants to stay home, uh, they will be totally protected, from it.*"

54. On or about March 19, 2020, up through and including September of 2020 Plaintiff repeatedly complained to Defendants that they had created, and were creating, an unsafe work environment by prohibiting employees from wearing masks and from practicing social distancing, including by complaining to Store V.P. Christian Cruz and Director of Operations Felix Rodriguez. Plaintiff logged his complaints in the logbook.

55. Defendants stated to Plaintiff in response that if *"customers see us wearing masks they will perceive us as sick and not shop in the store*," and dismissed Plaintiff's complaints.

56. Plaintiff also complained to Ms. Story that Defendants' refusal to allow employees to wear masks and socially distance created and perpetuated an unsafe work environment and posed a significant threat to the health and safety of the employees and the customers.

57. On or about March 28, 2020, at a Manager's Meeting, Plaintiff complained about having contact with multiple team members who were COVID positive.

58. After approximately fifty of Stew Leonard's Yonkers employees tested positive for COVID-19, Defendants still failed and refused to close down the store for deep cleaning, despite Plaintiff's additional complaints.

59. Plaintiff was told by Christian Cruz, Felix Rodriguez and Ellen Story to keep quiet about Defendants unsafe working environment or he would lose his job.

60. On or about March 27, 2020, Plaintiff was informed by a co-worker with whom he worked closely that he was diagnosed with COVID-19.

61. Upon information and belief, Human Resources was advised that this co-worker had tested positive for COVID-19.

62. On March 29, 2020, Plaintiff notified Ms. Story and upper management via email that he had been exposed to this employee and other employees who had been infected by COVID-19.

63. Defendants acknowledged Plaintiff's close contact and promised Plaintiff, as a precautionary measure, to remain out of work for 14 days.

64. Notwithstanding this promise, Defendants notified Plaintiff that they expected him to return to work

65. Defendants then told Plaintiff he would be expected to return to work 6 days later, on April 4, 2020.

66. On April 3, 2020, Plaintiff tested positive for COVID-19.


**<u>Defendants Terminate Crosby After He Becomes Disabled</u>**

**<u>with Long-Haul COVID-19 and for Complaining About Discrimination</u>**


67. Plaintiff's COVID-19 symptoms were extreme and life-threatening and included low oxygen levels, shortness of breath, fever, digestive issues, migraines, loss of smell and taste, nausea, brain fog, Epstein Barr Syndrome, Chronic Fatigue Syndrome, memory loss, muscle weakness, dizziness, blurred vision and anxiety, among others, and required hospitalization and he was admitted to Garnet Health Medical Center.

68. Plaintiff thereafter requested Family and Medical Leave. The company reluctantly granted him his leave request and he was out of work on Family Medical Leave Act

(FMLA) until June 22, 2020. He then took a Discretionary Personal Leave until July 22, 2020.

69. At the end of his FMLA Leave, Defendants were aware that Plaintiff was still suffering from Long Haul COVID-19. Although Plaintiff was disabled, Defendants pressured him to return to work and failed to engage in the required interactive process to determine whether an accommodation was available, despite plaintiff's repeated requests for an accommodation. On July 22, 2020, due to repeated threats from Ellen Story, among others, Plaintiff feared losing his job, he requested medical clearance to return to work.

70. Plaintiff returned to work and continued to work even though he remained disabled and without any accommodations. Working while disabled proved extraordinarily difficult and his condition worsened. On August 13, 2020, his symptoms became so debilitating that he could no longer even report to work and Plaintiff took paid Family Personal Time (PFD) The debilitating symptoms of long haul Covid-19 that Plaintiff experienced included  chronic  fatigue, Epstein Barr,  brain fog, dizziness and gastrointestinal issues prevented Plaintiff from performing the essential functions of his job, without an accommodation, such as working from home, abbreviated shifts and modified work schedules.

71. Before he returned, Defendants forced Plaintiff to work from home despite his condition. Although he had repeatedly requested, no one asked Plaintiff if he needed a reasonable accommodation at that time.

72. On September 1, 2020, again fearing he would lose his job, Plaintiff returned to work even though he was still disabled with Long Haul COVID-19 and even though Defendants were aware of his disability.

73. On September 4, 2020, Plaintiff asked the Vice President of the Yonkers store Christian Cruz (hereinafter, "Cruz") for permission to leave work at 1:00 p.m. to go to his doctor because he was experiencing gastrointestinal issues related to diverticulitis.

74. Cruz agreed to allow Plaintiff to leave early for a doctor's appointment stating, *"No problem, Rob, do it and take care of yourself*." Cruz further commiserated with the Plaintiff stating that he also suffered from diverticulitis and knew first-hand how painful and debilitating it was. Although his supervisor permitted Crosby to attend this doctor's appointment, at no point did Defendants engage in the interactive process to identify a suitable accommodation that would permit Crosby to perform the essential functions of his job while he suffered from Long Haul COVID-19.

75. On September 5, 2020, due to ongoing complications from his Long Haul COVID-19, Plaintiff was admitted to the Garnet Health Medical Center with severe gastrointestinal issues.

76. Plaintiff remained in the hospital in September of 2020 for 6 days until he was released on September 11, 2020.

77. While in the hospital on leave, on September 6, 2020, Cruz, who had previously sympathized with Plaintiff on the debilitating nature of diverticulitis directed Plaintiff to work from his hospital bed by scheduling a police detail for the Defendant's store, and Plaintiff, despite his disability and being in the hospital, complied with this instruction.

78. On September 10, 2020, Plaintiff spoke with Cruz on the phone from his hospital bed, wherein Cruz acknowledged that he too had had diverticulitis and knew how debilitating it was, yet he continued to demand that Plaintiff work from his hospital bed.

79. During Plaintiff's period of convalescence, he repeatedly requested of the Defendants a reasonable accommodation until he fully recovered from the Long Haul COVID-19 symptoms but once again, Defendants ignored his requests.

80. Instead of engaging in the interactive process, Defendants forced Plaintiff to perform services in the hospital and at home.

81. At no time during his convalescence did Defendants engage with Plaintiff in the interactive process as required by applicable law.

82. On or about September 5, 2020, in another effort to effectuate a reasonable accommodation, Plaintiff submitted a medical note to Defendants wherein he requested a short leave as an accommodation.

83. Although plainly aware that Plaintiff was disabled and in need of an accommodation, Defendants once again refused to engage in the interactive process and evaluate Plaintiff's need for leave as an accommodation.

84. Instead, Defendants on September 28, 2020, after 20 years of dedicated service, terminated Plaintiff's employment in violation of the law and in contradiction to Leonard Jr's March 18, 2020, assurance that nobody would lose their jobs.

85. At the time of the termination of his employment, Ms. Story advised Plaintiff that he had utilized all of his "protected leave." This was plainly inaccurate. Plaintiff had accrued 80 hours of "banked time" at the time of his termination. Not only did Plaintiff have that accrued paid time off to use, but Defendants failed to engage Plaintiff in the interactive process to determine whether an accommodation in the form of a leave of absence was reasonable. Furthermore, Plaintiff was, at that time and remains entitled to payment for Family Personal Time which he utilized while he was out on disability. Additionally,

Defendants have failed to pay the Plaintiff the 80 hours of "banked time" or PTO to which he was entitled

## FOR A FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON PLAINTIFF'S  ACTUAL OR PERCEIVED DISABILITY AND FAILURE AND REFUSAL TO MAKE A REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

**(Against Defendants Yonkers and Norwalk)**

86. Plaintiff repeats, reiterates realleges each and every allegation made in the above paragraphs of this complaint with the same force and effect as if fully set forth herein at length.

87. This claim is authorized and instituted pursuant to the provisions of The Americans with Disabilities Act of 1990, 42 U.S.C. Sec. 1201, et. seq. for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of The ADA's prohibition against discrimination in employment based, in whole or in part, upon employee's actual or perceived disability). Since at least March, 2020 defendants have engaged in unlawful employment practices in violation of the ADA Sections 102(a), 102(b) (1) and 102(b) (5) (B), 42 U.S.C. sections 12112(a), 12112(b) (1) and 12112(b) (5) (B). These practices include but are not limited to defendants' termination of Plaintiff's employment as a result of his disability and their refusal to accommodate plaintiff's COVID related and pre-existing condition request to work from home, which would have enabled Plaintiff to perform the essential functions of his job.

88. Plaintiff is at all times a qualified individual with a disability or a perceived disability, who was able to perform the essential functions of his position with or without reasonable accommodation, because of his disability and defendant's termination of plaintiff was based on plaintiff's disability.

89. The effect of practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability or perceived disability.

90. The unlawful employment practices complained of above were and are intentional.

91. As a direct and proximate cause of all acts of disability discrimination, plaintiff suffered and continues to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## AS AND FOR A SECOND CAUSE OF ACTION

## UNLAWFUL TERMINATION AND FAILURE TO MAKE A REASONABLE ACCOMMODATION  BASED ON DISABILITY UNDER NYS EXECUTIVE LAW

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint with the same force and effect as if fully set forth herein at length.

93. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, *sex*, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to **discharge** from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

94. Plaintiff had, at all relevant times, a disability as that term is defined in the NYSHRL. Plaintiff's disability did not prevent him from performing his job with a reasonable accommodation.

95. By firing Defendant while he was out on medical leave and not offering him any reasonable accommodation, despite its awareness of his health issues, Stew Leonards' has discriminated against Plaintiff on the basis of his disability, in violation of NYSHRL

96. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damages as a result of Stew Leonards' discriminatory practices.

97. Plaintiff is at all times a qualified individual with a  disability or a perceived disability, who was able to perform the essential functions of his position with or without reasonable accommodation, because of his disability and defendant's termination of plaintiff was based on plaintiff's disability

98. The  effect of practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability or perceived disability

99. The unlawful employment practices complained of above were and are intentional

100.     As a direct and proximate cause of all acts of disability discrimination, plaintiff suffered and continues to suffer the loss of income, the loss of a salary, bonuses, benefits and others compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## AS AND FOR A THIRD CAUSE OF ACTION

## INTERFERENCE WITH THE EXERCISE OF RIGHTS IN VIOLATION OF FAMILY AND MEDICAL LEAVE ACT.

101.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint with the same force and effect as if fully set forth herein.

102.     On or about In September 2020, Plaintiff submitted to Defendant Yonkers a request for intermittent FMLA leave and supporting medical information and certification from his treating physician which showed that Plaintiff was requesting leave for an FMLA-qualifying reason.

103.     By submitting these forms Plaintiff satisfied his responsibility under 29 U.S.C. § 2613(b), 29 C.F.R. § 325.301, 29 C.F.R. § 325.302, 29 C.F.R. § 325.305(c), and 29 C.F.R. § 325.306.

104.     The intermittent FMLA leave requested by Plaintiff was medically necessary.

105.     Not only did Defendant's ignore Plaintiff's request for a medically necessary extension of his FMLA, they failed to honor the 80 hours of banked time Family Personal Time or PTO)  Plaintiff had accumulated and was entitled to , to then they also terminated his employment. Pursuant to 20 C.F.R. § 825.300(b)(1) Defendants were required to provide Plaintiff with notice of his eligibility under the FMLA within five days of Plaintiff's request for FMLA leave. . Defendants failed to provide Plaintiff with timely notice of his eligibility under the FMLA. . Defendants' actions prevented Plaintiff from exercising his rights under the FMLA. Defendants continued to interfere with Plaintiffs attempts to exercise his rights under the FMLA by discouraging him from seeking reimbursement for his leave.

22

106.     Defendants continue to interfere with the exercise of Plaintiff's rights under the

FMLA by failing to reinstate benefits he lost during his unpaid and involuntary leave of

absence. Defendants have interfered with Plaintiff's exercise of rights provided by the

FMLA in violation of 29 U.S.C. § 2615(a)(1).As a result of Defendants' conduct Plaintiff

has suffered damages, including, but not limited to, economic losses, in the form of lost

salary, employment benefits and other compensation and loss of employment benefits.

107.     As a further result of the actions of Defendants, Plaintiff has incurred, and will

continue to incur, attorneys' fees and costs in pursuing this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

108.     Plaintiff repeats , reiterates and realleges each and every foregoing paragraph of

this complaint with the same force and effect as if fully set forth herein.

109.     Plaintiff was eligible for and entitled to FMLA leave.

110.     Plaintiff provided Defendants with adequate notice of his request for FMLA

leave, as well as sufficient information to inform Defendants that he requested leave for a

protected reason.

111.     Plaintiff did so in accordance with the FMLA and accompanying regulations,

including but not limited to 29 U.S.C. § 2613(b), 29 C.F.R. § 325.301, 29 C.F.R. §

325.302, 29 C.F.R. § 325.305(c), and 29 C.F.R. § 325.306.

112.     Defendants placed Plaintiff on an unpaid leave against his will to intentionally

retaliate against him for exercising his rights under the FMLA in violation of 29 U.S.C. §

2615(a)(2) and failed and refused to honor the 80 hours of banked personal time off Plaintiff had accumulated and terminated him.

113.     As a result of Defendants' conduct, Plaintiff has suffered damages, including, but not limited to, economic losses, in the form of lost salary, employment benefits and other compensation and loss of employment benefits.

114.     As a further result of the actions of Defendants, Plaintiff has incurred, and will continue to incur, attorneys' fees and costs in pursuing this action.

## AS AND FOR A FIFTH  CAUSE OF ACTION

## FOR OPPOSED DISCRIMINATION RETALIATION UNDER TITLE VII

### (Against Defendants Yonkers and Norwalk)


115.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above complaint  with the same force and effect as if fully set forth herein at length.

116.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to ... discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

117.     Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. § 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or

privileges of employment because of his opposition to the unlawful employment practices of Defendants by firing him.

## AS AND FOR A SIXTH CAUSE OF ACTION

## OPPOSED DISCRIMINATION RETALIATION UNDER NYS LAW

118. Plaintiff repeats, reiterates and realleges each and every allegation made in the above complaint with the same force and effect as if fully set forth herein at length.

119. The New York State Executive Law makes it unlawful to retaliate against an employee in the terms, conditions or privileges of employment on the basis of a complaint of discrimination based upon a disability.

120. The Executive Law makes it unlawful for a resident person to violate any provision of the Executive Law or to aid, abet, incite, compel or coerce the doing of any of the forbidden acts, or to attempt to do so.

121. Defendants engaged in unlawful employment practice prohibited by New York State Executive Law by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants by firing him.

122. As a direct and proximate cause of all acts of unlawful retaliation based upon disability discrimination, plaintiff suffered damages in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION

## SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT IN VIOLATION OF

## TITLE VII

### (Against Defendants Yonkers and Norwalk)

123.     Plaintiff repeats reiterates and realleges each and every allegation made in the

above paragraphs of this complaint. with the same force and effect as if fully set forth

herein at length.

124.     This claim is authorized and instituted pursuant to the provisions of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the

unlawful employment practices of the above-named Defendants. Plaintiff complains of

Defendants' violation of Title VII's prohibition against discrimination in employment

based, in whole or in part, upon an employee's gender (sexual harassment) in creating a

hostile work environment

125.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §

2000e et seq., by discriminating against Plaintiff (sexual harassment) by creating a hostile

work environment to which Plaintiff was opposed.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

### SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT UNDER NYS

### EXECUTIVE LAW

126.     Plaintiff repeats, reiterates  and realleges each and every allegation made in the

above complaint with the same force and effect as if fully set forth herein at length.

127.    Section 296 of the New York Executive Law prohibits sexual harassment, abuse and a hostile work environment.

128.    New York state Executive law Section 296 makes it an unlawful discriminatory practice for an employer, because of an individual's gender…. To discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

129.    A hostile work environment is a workplace so ridden with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment.

130.    The environment at LEONARD'S YONKERS was such that a reasonable employee in Plaintiffs' shoes would perceive it as hostile.

131.    The environment at LEONARD'S YONKERS was such that a reasonable

employee in Plaintiffs' shoes would perceive it as hostile.

132.    As a direct result of this hostile work environment, Plaintiffs suffered injury and

harm in an amount to be determined at trial, and request a judgment in no event less than

$500,000 in compensatory damages; the costs and disbursements of this action; all

relevant interest; and any such other relief to Plaintiffs as this Court deems just and

proper

## AS AND FOR A NINTH  CAUSE OF ACTION

## FOR HOSTILE ENVIRONMENT /OPPOSED DISCRIMINATION  IN VIOLATION OF TITLE VII

### (Against Defendants Yonkers and Norwalk)

133.    Plaintiff repeats, reiterates  and realleges each and every allegation made in the

above complaint  with the same force and effect as if fully set forth herein at length.

134.    This claim is authorized and instituted pursuant to the provisions of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the

unlawful employment practices of the above-named Defendants. Plaintiff complains of

Defendants' violation of Title VII's prohibition against discrimination in employment

based, in whole or in part, upon an employee's religious affiliation in creating a hostile

work environment.

135.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §

2000e et seq., by discriminating against Plaintiff by creating a hostile work environment

based on religious discrimination to which Plaintiff was opposed.


## AS AND FOR A TENTH CAUSE OF ACTION HOSTILE ENVIRONMENT DISCRIMINATION BECAUSE OF RELIGION OR CREED/OPPOSED DISCRIMINATION IN VIOLATION OF NYSHRL

136.     Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint with the same force and effect as if fully set forth

herein

137.     New York state Executive law Section 296 makes it an unlawful discriminatory

practice for an employer, because of an individual's creed…. To discharge from

employment such individual or to discriminate against such individual in compensation

or in terms, conditions or privileges of employment.

138.      A hostile work environment is a workplace so ridden with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

condition of the victim's employment and create an abusive work environment.

139.     The environment at LEONARD'S YONKERS was such that a reasonable

employee in Plaintiffs' shoes would perceive it as hostile. As a direct result of this hostile

work environment, Plaintiffs suffered injury and harm in an amount to be determined at

trial and request a judgment in no event less than $500,000 in compensatory damages; the

costs and disbursements of this action; all relevant interest; and any such other relief to Plaintiffs as this Court deems just and proper.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

## HOSTILE ENVIRONMENT BASED ON OPPOSED RACE DISCRIMINATION IN VIOLATION OF TITLE VII

### (Against Defendants Yonkers and Norwalk)

140.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above complaint with the same force and effect as if fully set forth herein at length.

141.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religious affiliation in creating a hostile work environment.

142.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by discriminating against Plaintiff by creating a hostile work environment based on religious discrimination to which Plaintiff opposed.

## AS AND FOR A TWELFTH CAUSE OF ACTION

## FOR HOSTILE ENVIRONMENT BASED ON OPPOSED RACIAL DISCRIMINATION IN VIOLATION OF THE NYSHRL

143.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

144.     New York state Executive law Section 296 makes it an unlawful discriminatory practice for an employer, because of an individual's race…. To discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

145.     A hostile work environment is a workplace so ridden with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment.

146.     The environment at LEONARD'S YONKERS was such that a reasonable employee in Plaintiffs' shoes would perceive it as hostile.

147.     As a direct result of this hostile work environment, Plaintiffs suffered injury and harm in an amount to be determined at trial and request a judgment in no event less than $500,000 in compensatory damages; the costs and disbursements of this action; all relevant interest; and any such other relief to Plaintiffs as this Court deems just and proper.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

## AGE DISCRIMINATION UNDER THE ADEA

148.     Plaintiff repeats, reiterates  and realleges each and every allegation made in the above complaint  with the same force and effect as if fully set forth herein at length.

149.     At all relevant times herein, Plaintiff was an "employee" under the ADEA, 29 U.S.C Section 630(f).

150.     Defendants YONKERS and  NORWALK are "employers" under the ADEA, 29 U.S.C Section 630 (b).

151.     By Defendants actions detailed above, including but not limited to the termination of Plaintiff's employment, Defendants have unlawfully discriminated against Plaintiff on the basis of his age in violation of the ADEA.

152.     As a result of Defendants' discrimination, Plaintiff has suffered substantial damages, amount to be determined at trial.

153.     Defendants' conduct was willful, entitling Plaintiff to liquidated damages pursuant to 29 U.S.C Section 636(b)

## AS AND FOR A FOURTEENTH  CAUSE OF ACTION

## AGE DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

154.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint with the same force and effect as if  fully set forth herein

155.     At all relevant times, Plaintiff was an "employee" for purposes of Section 292 of the New York State Human Rights Law.

156.     Defendants are "employers" for purposes of Section 292 (5) of the New York State Human Rights Law.

157.     By its actions detailed above, including but not limited to the termination of Plaintiff's employment, Defendants unlawfully discriminated against Plaintiff on the basis of his age in violation of Section 296 (1) of the New York State Human Rights Law.

158.     As a result of Defendants' discrimination, Plaintiff has suffered substantial damages, including but not limited to mental and emotional distress and lost wages and benefits in an amount to be determined at trial.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR Unpaid Vacation Time as Wages Claim - IN VIOLATION OF NEW YORK LABOR LAW

### (Against All Defendants)

159.     Plaintiff repeats , reiterates and re-alleges each and every allegation of the above paragraphs of this Complaint with the same force and effect  as if fully set forth herein.

160.     For the entire year in 2020, Plaintiff has accrued eighty hours (80) of paid time off (i.e., PTO)

161.     . Upon information and belief, the value of Plaintiff's  PTO is Three Thousand, Three Hundred, Sixty-Three Dollars and Fifty-Six Cents ($3,363.53) , which is the product of his approximate hourly pay rate multiplied by the number of hours of PTO  he has accumulated.

162.     Upon information and belief, pursuant to NYLL §§ 190 and 198-c, Plaintiff's unused vacation time is defined as wages.

163.    . Despite Plaintiff's request to Defendants to be paid the value of his PTO Defendants have refused.

164.    Plaintiff is entitled to an award equal to the amount of his unreimbursed expenses in an amount to be determined by the Court, but no less than is three thousand three hundred sixty-three  dollars and fifty-six  ($3,363.56), liquidated damages pursuant to NYLL § 663, the costs of this action and his attorneys' fees.

### JURY DEMAND

165.    Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

a.  Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII FMLA, ADA,  ADEA,  and the NYSHRL in that Defendants discriminated against Plaintiff on the basis of his perceived or actual disability, opposed discrimination, hostile environment discrimination based on sex, sexual harassment and hostile environment discrimination based on race, sex  and religion and age discrimination and retaliation and that the Defendant's engaged in unlawful employment practices in violation of the FLSA by failing to pay Plaintiff wages for unused and accrued PTO.

b.  Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed.

c.  Awarding damages to the Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices.

d. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts.

e. Awarding Plaintiff punitive damages.

f. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action.

g. Awarding Plaintiff such other and furthers relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just, proper and equitable.

Dated: Croton-on-Hudson, NY
June 10, 2022

                                   **HERTZ LEGAL, P.C.**

                                   *Karen Mizrahi* (KM1730)
                                   *Attorneys for Plaintiff*
                                   503 Half Moon Bay Drive
                                   Croton-on-Hudson, NY 10520
                                   (914) 393-6971
                                   karen@hertzlegal.com