UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
ROBERT CROSBY, JR.

                       Plaintiff,

          - against –

                                                22-cv-04907 (KMK)

STEW LEONARD'S YONKERS,
LLC and STEW LEONARD, JR.,

                   Defendants.

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO  DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

HERTZ LEGAL, P.C.
Attorneys for Plaintiff
503 Half Moon Bay Drive
Croton on Hudson  NY 10520
(914) 393 6971
karen@hertzlegal.com

Table of Contents

I.      **Preliminary Statement**..................................................................................**4**

II.     **Statement of Material Fact**..........................................................................**4**

III.    **Standard of Review**.......................................................................................**7**

    a.  PLAINTIFF ADEQUATELY PLEADS DISABILITY DISCRIMINATION
        IN VIOLATIONOF THE ADA...............................................................................8

    b.  PLAINTIFF ADEQUATELY PLEADS FAILURE TO ENGAGE IN THE INTERACTIVE
        PROCESS AND FAILURE TO ACCOMMODATE UNDER THE ADA.............................9

    c.  DEFENDANTS CAUSED THE BREAKDOWN IN THE INTERACTIVE PROCESS...........11

    d.  PLAINTIFF ADEQUATELY PLEADS FMLA INTERFERENCE...........................................12

    e.  DISPARATE TREATMENT.................................................................................16

    f.  PLAINTIFF ADEQUATELY PLEADS FMLA RETALATION............................................17

    g.  PLAINTIFF ADEQUATELY PLEADS "OPPOSED DISCRIMINATION"..........................19

IV.     **Continuing Violation**...................................................................................**18**

V.      **Causation**......................................................................................................**22**

VI.     **Defendant's Motion to Strike Should be Denied** ...................…......**20**

VII.    **Conclusion**..............................................................................…..................**21**

**TABLE OF AUTHORITIES**

*Cases*

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)* _____ 7

*Akinfaderin v. W. P. Carey & Co. LLC,* No. 11-cv-3184, 2011 WL 6961403, at *6, 2011 U.S. Dist. LEXIS 150740 at
  *15 (S.D.N.Y. Dec. 28, 2011 _____ 18

*Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A)* _____ 9

Antrobus v New York City Health and Hospitals Corporation  2021 WL 964438 (2021)_____ 19

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  at 556 U.S. at 678
*(citing Twombly,* 550 U.S. at 556)_____ 7

*Boncouer v Haverstraw Stony Point Central School District, 2022 WL 845770 (SDNY 2022* _____ 15

*Brady v Wal-Mart Stores, Inc.* 532 F 3d. 127, 135 ( 2d. Cir. 2008) _____ 13

*Bagley v JP Morgan Chase & Co, No 10 Civ 1592, (PGG) (SDNY July 12, 2012)_____ 17

*Beck v Univ. of Wis. Bd. Of Regents,* 75 F.3d. 1130-1135-36 (7th Cir 1996)_____ 8

Brown v Pension Boards 488 F Supp. 2d 395 (SDNY 2007_____ 15

*Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012)* _____ 8

*Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)_____ 7

*Clark v Jewish Childcare Ass'n, Inc,.*96 F.Supp.3d. 237, (2015) _____ 8

*Clemens v Moodys Analytics, Inc.,770 Fed. Appx. 10 (2d Cir. 2019)_____ 13

*Cornwell* v. *Robinson,* 23 F.3d 694, 704 (2d Cir. 1994)_____ 19

*Id.,* at 802, 93 S.Ct. 1817; *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000) _____ 9

*Doe V. Suny Purchase College,* No. 7: 21-Cv-08417-Kmk-Ped (S.D.N.Y. Oct. 18, 2022)_____ 20

*Dingman v.Fuji Japanese Steakhouse Sushi Inc, et al. 20 cv 4850 (NSR) 2022_____ 7

*Esser v. Rainbow Advertising Sales Corp., 448 F.Supp.2d 574, 580 (S.D.N.Y.2006* _____ 15

*Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 418–19 (E.D.N.Y. 2017)_____ 19

*Figueroa v. Johnson*, 109 F. Supp. 3d 532, 549 (E.D.N.Y. 2015) *aff'd*, 648 Fed.Appx. 130 (2d Cir. 2016) _____ 20

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)_____ 19

*Goonan v Federal Reserve Bank of New York*, 916 F. Supp. 2d. 470 (2013 _____ 10

*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)_____ 15

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006 _____ 10

*Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016 _____ 16

*Harper v. New York City Housing Authority*, 673 F. Supp. 2d 174 (S.D.N.Y. 2009). _____ 7

*Horsting v St. John's Riverside Hospital SDNY (2018)* _____ 7

*Jackan v. New York State Dept. of Labor,* 205 F.3d 562, 566 (2d Cir.2000) _____ 12

*Jacobsen v. New York City Health & Hosps. Corp.,* 22 N.Y.3d 824, 837, 11 N.E.3d 159, 169 (N.Y. 2014) _____ 13

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013 _____ 19

*Kinneary v. City of New York*, 601 F.3d 151,156  (2d Cir. 2010). _____ 9

*Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) _____ 7

*Laudadio v. Johanns*, 677 F. Supp. 2d 590, 613 (E.D.N.Y. 2010) _____ 18

*Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 201* _____ 19

*Lipsky v Commonwealth United Corp. 551 F.2d. 887 (2d Cir.1976)*_____ 21

*McBride v. BIC Consumer Prods. Mfg. Co., Inc.,* 583 F.3d 92, 97 (2d Cir. 2009)_____ 10

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)._____ 9

*Meyers V. Medco Health Solutions, Inc.*, Court No. 09 Civ. 09216 (Rke) (S.D.N.Y. Mar. 31, 2015 _____ 19

*Mitchell v Washingtonville Cent. School Dist, 190 F 3d. 1 (2d Cir 1999)* _____ 14

*Walton v Mental Health Ass'n, 168 F 3d. 661 (3d. Cir. 1999*_____ 14

*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) _____ 14

*Noel v. BNY-Mellon Corp.,* 514 F. App'x 9, 10 (2d Cir. 2013) _____ 13

*Noll v. Int'l Bus. Machs. Corp.,* 787 F.3d 89, 94 (2d Cir. 2015_____ 9

*Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 338 (2d Cir. 2000)_____ 6

*Phillips v. City of New York, 66 A.D. 3d 170, 176 (1st Dep't 2009*_____ 10

*Pinto v New York City Administration for Children's Services ,USDC, SDNY 2018 WL 4333990* _____ 8

Quadir v New York State Dept of Labor NO 13 CV 3327 _____ 12

*Reed v A.W.Lawrence & Co.*, 95 F.3d 1170, 1179–80 (2d Cir. 1996 _____ 19

*Reilly v Revlon* 620 F.Supp.2d 524 *(2009* _____ 18

*Sivio v. Village Care Max*, 436 F. Supp. 3d 778 (S.D.N.Y. 2020) _____ 11

*Sivio,  Zito v. Donahoe*, 915 F. Supp. 2d 440 (S.D.N.Y. 2012 _____ 11

*Smith v. Westchester Cty.,* 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) _____ 7

*Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)* _____ 20

*Stryker v. HSBC Securities (USA)*, No. 16-cv-9424 (JGK) (S.D.N.Y. Aug. 31, 2020). _____ 8

*Thompson v. New York City Dept. of Prob.,* 348 Fed.Appx. 643 (2d Cir.2009) _____ 12

*Thompson v. City of New York,* No. 03 Civ. 4182, 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006)
*report and recommendation adopted,* No. 03 Civ. 4182, 2006 WL 6357978 (S.D.N.Y.
*Sept.* 11, 2006) _____ 12

Vaughn v Empire City Casino at Yonkers Raceway, 2017 WL 3017503, _____ 17

*Vinokur v. Sovereign Bank,* 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010 _____ 10

*Weekes V. Jetblue Airways Corporation*, No. 21-CV-1965 (MKB) (E.D.N.Y. Sept. 16, 2022). _____ 8

*Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000 _____ 8

*Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710 (S.D.N.Y. 2019) _____ 21

*Zann Kwan v. Andalex Group LLC, 737 F.3d 834 (2d Cir. 2013* _____ 19

## PRELIMINARY STATEMENT

The Plaintiff, Robert Crosby, Jr. (hereinafter "Plaintiff"), respectfully submits the following in opposition to Defendants Stew Leonard's Yonkers, LLC and Stew Leonard Jr. (hereinafter "Yonkers " and "Leonard" or "Defendants", collectively)'s motion to dismiss the Third Amended Complaint ("TAC.")   As illustrated by case law and all the pleadings, the facts have been sufficiently pled to state claims for disability discrimination in violation of  the ADA ( Americans with Disabilities Act)). ADA. and  New York State Human Rights Law .NYSHRL, ( New York State Human Rights Law),  and the FMLA ( (Family Medical Leave Act)  , FMLA interference and retaliation in violation of FMLA and NYSHRL and opposed  race, religion and gender discrimination retaliation in violation of 42 USC Section 1981 and the NYSHRL. If resolved in Plaintiff's favor, said facts would further support all of the legal elements necessary to sustain Plaintiff's Federal and New York State law claims.

## STATEMENT OF MATERIAL FACTS

The material, unrefuted facts are as follows:

1. Plaintiff Robert Crosby, Jr. ("Plaintiff") began his 20-year employment with Defendant Stew Leonard's, Yonkers ("Yonkers") on or about February 2001 at the Yonkers facility.

2. At all relevant times, Plaintiff was a "Loss Prevention Manager".

3. On or about March 5, 2020, at the outset of the COVID-19 pandemic, and continuing through September 2020, Plaintiff raised concerns with Yonkers management about the need for effective steps to limit the spread of COVID-19 among Yonkers employees; management failed to respond to Plaintiff's concerns.

4.  During this time period many Yonkers employees contracted Covid-19; on or about April 3, 2020, Plaintiff tested positive for the disease.

5.  Plaintiff's disease symptoms were comprehensive and severe, impacting Plaintiff's breathing, his muscles, vision, digestive system and more.

6.  Plaintiff requested and obtained a medical leave of absence through June 22, 2020.

7.  Due to Plaintiff's persistent medical needs (often referred to as "Long Covid") Plaintiff extended his leave for an additional month, up until July 22, 2020.

8.  In response to pressures from Yonkers management, Plaintiff, though still experiencing serious medical issues, both worked from home and returned to work at the Yonkers facility.

9.  After three weeks back at work, Plaintiff's medical condition worsened and Plaintiff took additional medical leave, utilizing his "bank" of leave which he had accrued under Yonkers policies; at the request of management, Plaintiff was asked to continue to work while on this leave and Plaintiff did so.

10. As Plaintiff's medical condition worsened, Plaintiff was admitted to Garnet Medical Center, where he remained for six days.

11. Throughout this time, Plaintiff continually sought to discuss with management some on-going plan to allow him to work a mixture of in person and remote work so that he could recover more quickly and return to his full prior work responsibilities; management failed to respond to this issue.

12. On September 5, 2020, Plaintiff submitted a medical note to Yonkers requesting short additional leave, with the hope that some modified work arrangement might be reached with management. Plaintiff received no response from management.

13. Instead of reaching out to Plaintiff to discuss some accommodation or next steps, Yonkers terminated Plaintiff's 20-year employment on September 28, 2020.

14. On June 1, 2021, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights(NYSDHR); the Charge was then filed with the Equal Employment Opportunity Commission(EEOC).

15. On November 30, 2021, the NYSDHR, after conducting its investigation, issued a finding of "Probable Cause", indicating their concern that Defendants may have acted inappropriately in their handling of Plaintiff's issues.

16. After the EEOC issued a "Right to Sue" , Plaintiff timely commenced this action.

17. Plaintiff alleges that throughout much of Plaintiff's employment with Yonkers, including during Plaintiff's last years of employment with Yonkers, Plaintiff raised concerns regarding discriminatory comments and behavior by management directed at African Americans, women and Jews.  Yonkers failed to respond to those allegations.  It is Plaintiff's belief that Yonkers' lack of response to his medical needs were, at least partially based on retaliation for Plaintiff's repeated complaints about inappropriate discriminatory behavior by Defendants.

## STANDARD OF REVIEW

It is well established that to survive dismissal, "a complaint must allege sufficient facts to state a

plausible claim*". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929*

*(2007)*  A claim is plausible when the plaintiff pleads facts to support the reasonable inference

that the defendant has acted unlawfully. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.

2d 868 (2009).  at 556 U.S. at 678 (*citing Twombly,* 550 U.S. at 556).   "[A]t the motion to dismiss

stage, [however,] a plaintiff `need not plead specific facts establishing a *prima facie* case of

discrimination. . . .'"  *Smith v. Westchester Cty.,* 769 F. Supp. 2d 448, 465 (S.D.N.Y.

2011).Instead, a plaintiff need only "plead . . . facts sufficient to state a claim to relief that is

plausible on its face." See also,   *Horsting v St. John's Riverside Hospital SDNY (2018)*  In

considering Defendant's Motion, the Court is required to "accept as true all of the factual

allegations contained in the [C]omplaint."  *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d

122, 124 (2d Cir. 2008) (per curiam).

Plaintiff adequately pleads facts to support a reasonable inference of disability discrimination

(wrongful termination )in violation of the ADA, failure to engage in the interactive process in

violation of the ADA, FMLA interference and retaliation, and opposed discrimination retaliation

in violation of  Title VII and NYSHRL.

The Court's function on a motion to dismiss  is not to "weigh the evidence that might be

presented at trial but merely to determine whether the complaint itself is legally sufficient."

*Harper v. New York City Housing Authority*, 673 F. Supp. 2d 174 (S.D.N.Y. 2009).

Further, "[f]or the purpose of resolving [a]  motion to  dismiss the Court ... draw[s] all reasonable

inferences in favor   of the plaintiff  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)

To make prima facie showing, "The plaintiff's burden at this stage is "minimal" or "de minimis." Dingman v.Fuji Japanese Steakhouse Sushi Inc, et al. 20 cv 4850 (NSR) 2022  citing " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000) (describing burden for discrimination claims)

## PLAINTIFF ADEQUATELY PLEADS DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

"To establish a prima facie case of discrimination under the ADA, [a] plaintiff must show by a preponderance of the evidence that (1) his [or her] employer is subject to the ADA; (2) he [or she] was disabled within the meaning of the ADA; (3) he [or she] was otherwise qualified to perform the essential functions of his [or her] job, with or without reasonable accommodation; and (4) he [or she] suffered adverse  employment  action because of his [or her] disability." *Pinto v New York City Administration for Children's Services* ,USDC, SDNY 2018 WL 4333990 ,  *Clark v Jewish Childcare Ass'n, Inc,*.96 F.Supp.3d. 237, (2015)

The allegations are clear that 1) Defendants are subject to the ADA, 2)  Plaintiff was disabled within the meaning of the ADA,( Long Haul COVID)  is and was a qualified individual as  he had been performing the essential functions of his job for twenty years, and continued to do so while out on leave, , 3) that with or without a reasonable accommodation, Plaintiff  could perform essential job functions, as evidenced by his doing so, and 4)  he suffered adverse employment action because of his disability (was terminated.)

The Second Circuit has held that the plaintiff's "burden at the prima facie stage is minimal." *Stryker v. HSBC Securities (USA)*, No. 16-cv-9424 (JGK) (S.D.N.Y. Aug. 31, 2020). Citing *Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012).In Weekes V. Jetblue Airways Corporation*, No. 21-CV-1965 (MKB) (E.D.N.Y. Sept. 16, 2022).the Court held

that "[t]terminating a disabled employee ... who can perform the essential functions of the job but

cannot return to work because the employer has denied his request for reasonable

accommodation, is disability discrimination under the ADA." Citing *Kinneary v. City of New*

*York, 601 F.3d 151,156  (2d Cir. 2010).*  (alterations in original) (quoting *Parker v. Columbia*

*Pictures Indus.,* 204 F.3d 326, 338 (2d Cir. 2000)). Further it is well established in the Second

Circuit  that the "failure to make reasonable accommodation, when the employee has satisfied

the first three elements of his claim, amounts to discharge 'because of' his [or her]

disability." *Parker, at 338.*

 Employment discrimination claims brought under the ADA  are analyzed under the familiar

burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of discrimination, the plaintiff must

show that: (1) he was a member of the protected class; (2) he satisfactorily performed his duties;

(3) the employer took an adverse employment action against him; and (4) the adverse action took

place under circumstances giving rise to an inference of discrimination. *Id.,* at 802, 93 S.Ct.

1817; *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000).  Plaintiff meets all four

elements of a  prima facie case of discrimination.

## PLAINTIFF ADEQUATELY PLEADS FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO ACCOMMODATE UNDER THE ADA

To make out a prima facie failure-to-accommodate claim under the ADA, a plaintiff must

demonstrate that: (1) the plaintiff is a person with a disability under the meaning  of the ADA;

(2) an employer covered by the statute had notice of his disability; (3) with reasonable

accommodation the plaintiff could perform the essential functions of the job at issue; and (4) the

employer has refused to make such accommodations. Americans with Disabilities Act of 1990, §

102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A). See  *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F.

Supp. 3d 237 (S.D.N.Y. 2015).  *Noll v. Int'l Bus. Machs. Corp.,* 787 F.3d 89, 94 (2d Cir.

2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.,* 583 F.3d 92, 97 (2d Cir. 2009) (alterations in original));  (quoting *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006)*see also Vinokur v. Sovereign Bank,* 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010)

Plaintiff adequately pleads all four elements of a claim for failure to accommodate, and failure to engage in the interactive process. It is undisputed that Plaintiff was at the time of his termination a person with a disability  ( Long Haul Covid) within the meaning of the ADA and the NYSHRL; 2) Defendants were employers, who had notice of his disability, as evidenced by communications between Plaintiff and defendants from March 2020 until his termination  3) with a reasonable accommodation, Plaintiff could perform the essential functions of his job, as evidenced by his working from home and while hospitalized and that 4) Defendants failed and refused to make appropriate accommodations, despite having afforded a significant number of preferred employees a policy it denied to Plaintiff  (extended leaves without adverse action). Moreover, Plaintiff has plausibly alleged a causal connection between his request for accommodation and the adverse action.

"To determine the appropriate reasonable accommodation, it may be necessary for the [Employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Goonan v Federal Reserve Bank of New York,* 916 F. Supp. 2d. 470 (2013 )It is unrefuted that no such process between Plaintiff and defendants transpired to identify the limitations and potential reasonable accommodations to overcome those limitations  At the time of Plaintiff's termination, the majority of the American workforce  was working  from home or other remote locations.

**DEFENDANTS CAUSED  THE BREAKDOWN IN THE INTERACTIVE PROCESS**

Courts in the Second Circuit have held that courts should attempt to isolate the cause of the breakdown  [of the  interactive process and then assign responsibility.' " "*Sivio v. Village Care Max*, 436 F. Supp. 3d 778 (S.D.N.Y. 2020).

Courts in the  Second Circuit have consistently cited *Beck v Univ. of Wis. Bd. Of Regents,* 75 F.3d. 1130-1135-36 (7th Cir 1996) that" in evaluating a claim for failure to accommodate, therefor, the court should attempt to isolate the cause of the break down[ of the interactive process] and then assign responsibility." Further stating "Courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary "*Sivio,  Zito v. Donahoe*, 915 F. Supp. 2d 440 (S.D.N.Y. 2012)

As Defendant properly  notes, the investigation and" probable cause" finding  conducted by NYSDHR should be considered in ruling on this motion. ( Page 6 of Defendant Memorandum) Defendant acknowledges that plaintiff provided appropriate medical documentation to defendants, acknowledges Defendant's HR specialist Frank DeSantis' email of July 3, 2020, in which DeSantis states " I agree we should  have a more focused discussion about any continuing medical needs once your medical provider allows you to return to work"  Further Defendant acknowledges receiving medical notes from Plaintiff's Dr. Kim on September 14 and  September 30,2020, indicating a need for reevaluation in a month. However, Defendant fails to assert any effort by Defendants to explore any potential accommodations because by September 28, 2020, Defendants  had terminated Plaintiff's employment.

The evidence of the breakdown in the interactive process clearly supports the claim that the Defendants are responsible for the breakdown in the interactive process.

Plaintiff emailed Defendants on  September 14, 2020, with a medical note of Dr. Katherine Kim indicating that Complainant would be re-evaluated on September 21 or at the end of the month. Nobody representing the Defendants responded or sought additional information  . Here marks the  final breakdown in the interactive process. Plaintiff's September 14, 2020,  email was met with Defendants' email of September 28, 2020, informing Plaintiff that his employment had been terminated.

"An employer impedes the process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." *Thompson v. City of New York,* No. 03 Civ. 4182, 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006) *report and recommendation adopted,* No. 03 Civ. 4182, 2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006) *aff'd sub nom. Thompson v. New York City Dept. of Prob.,* 348 Fed.Appx. 643 (2d Cir.2009)

"Courts must deny motions to dismiss or motions for summary judgment when presented with conflicting facts about the provenance of a breakdown", *see, e.g., Thompson  id.* at *14

"Courts have struggled to define the appropriate burdens of persuasion when [the interactive] process breaks down and an employee seeks relief on the ground that his employer failed to `reasonably accommodate' his disability." *Jackan v. New York State Dept. of Labor,* 205 F.3d 562, 566 (2d Cir.2000) (assigning the burden of persuasion to a plaintiff when the question is whether a vacancy exists).

In Quadir v New York State Dept of Labor NO 13 CV 3327 held that the Employer is entitled to "request"( emphasis in the original ),that employee provide documentation of his disability (Plaintiff  provided multiple documentations of his disability) " and the appropriate

accommodations." In this case there was  no inquiry or discussion initiated by Defendants how they could accommodate the Plaintiff. Defendants failed to respond to Plaintiff's repeated requests. See July 14, 2020,  email from Plaintiff to Yonkers   " Frank, how can you best accommodate my needs? How can we work together to accommodate my needs?"

See also *Brady v Wal-Mart Stores, Inc.* 532 F 3d. 127, 135 ( 2d. Cir. 2008) (holding that employer was obligated to engage in the interactive process where employee's disability was obvious, even in the absence of a specific request from the employee); *Noel v. BNY-Mellon Corp.,* 514 F. App'x 9, 10 (2d Cir. 2013) (summary order) (NYSHRL also require participation in an interactive process). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). There was no such process here.

Under the NYSHRL, failure to engage in the interactive process itself violates the law . *Vangas v Montefiore Medical Center,* 6 F, Supp.3d 400, Dist Ct. SDNY (2014)(citing *Phillips v. City of New York,* 66 A.D. 3d 170, 176 (1st Dep't 2009); *see also Jacobsen v. New York City Health & Hosps. Corp.,* 22 N.Y.3d 824, 837, 11 N.E.3d 159, 169 (N.Y. 2014) (holding that both the NYSHRL [ and NYCHRL] require employers to engage in a good faith interactive process to assess "the needs of the disabled individual and the reasonableness of the accommodation requested[.]").

A good-faith interactive process may involve an employer meeting with the employee, requesting information about the employee's condition, asking what the employee wants, considering the request, and offering and discussing alternatives. Goonan  2014 WL 3610990 at 5.

"When the interactive process breaks down, a court should look for signs of good faith or bad faith, in assessing liability. A party that obstructs the process is not acting in good faith. Further, a party that fails to communicate, or withholds important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Thompson v. City of New York*, 2002 WL 31760219, at *8 (S.D.N.Y. Dec. 9, 2002) (citations omitted) citing *Beck v Univ of Wisconsin Bd. of Regents, 75 F3d.1130, 1135, 36 (7th. Cir. 1996)*

In other words, "[i]n evaluating a claim for failure to accommodate, ... courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." *Zito v. Donahoe*, 915 F. Supp. 2d 440, 446–47 (S.D.N.Y. 2012) (internal quotation marks omitted and alteration in original). "Courts must deny motions to dismiss or motions for summary judgment when presented with conflicting facts about the provenance of a breakdown...." *Goonan v. Fed. Rsrv. Bank of New York*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013).

*It should be noted that these transactions occurred during  the early days of the Covid pandemic and the medical community was overly cautious and that OSHA's guidelines suggested "Employers  ensure that sick leave policies are flexible and consistent with public health guidance".

Cases cited by defendant *Mitchell v Washingtonville Cent. School Dist, 190 F 3d. 1 (2d Cir 1999)  Walton v Mental Health Ass'n, 168 F 3d. 661 (3d. Cir. 1999) , Nowak and Rogers*  are distinguishable here because there is no evidence that Plaintiff   requested an extended leave as reasonable accommodation. It is abundantly clear from the evidence, including that proffered by Defendant, that Plaintiff simply requested a good faith effort to open dialogue about what reasonable accommodation, *if any*, would look like. See Plaintiff's June 16, 2020, email to Ellen

11

Story and July 14, 2020, email to Frank DeSantis asking "Frank, how can we work together to accommodate my needs?" to which there was no reply.  The correspondence after Plaintiff's September 14, 2022, Dr. note was his September 28, 2022, letter of termination . Again, Brown v Pension Boards 488 F Supp. 2d 395 (SDNY 2007)  is irrelevant to the case at bar, Plaintiff did not at any time request an open-ended leave.

### PLAINTIFF ADEQUATELY PLEADS FMLA  INTERFERENCE

To establish a *prima facie* claim of interference with rights under the FMLA, a plaintiff must establish by a preponderance of the evidence that: "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA*." Esser v. Rainbow Advertising Sales Corp., 448 F.Supp.2d 574, 580 (S.D.N.Y.2006)* (collecting cases).

To establish an interference claim pursuant to 29 U.S.C. § 2615(a)(1), a plaintiff need only prove that an "employer in some manner impeded the employee's exercise of his or her right[s]" protected provided by the FMLA. *Reilly v Revlon 620 F.Supp.2d 524 (2009) citin*g *Esser at 580*

### DEFENDANTS CONTINUE TO INTERFERE WITH PLAINTIFF'S FMLA RIGHTS

This Court has held that  "Fielding occasional [communications] about one's job while on leave is a professional courtesy that does not abrogate or interfere  with the exercise of an employee's FMLA  rights. When limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such [communications]". *Boncouer v Haverstraw Stony Point Central School District, 2022 WL 845770 (SDNY 2022)*

However, that is not the case here. Defendant's interference with Plaintiff's FMLA was extensive. From the date of his contracting COVID until the date of his termination, Plaintiff continued to receive emails, phone calls and text messages from team members. including requesting that he perform essential job functions while hospitalized,  Paragraph  76  of TAC .Defendant cites *Clemens v Moodys Analytics, Inc.,770 Fed. Appx. 10 (2d Cir. 2019)* , which states,  ." To succeed on a claim of FMLA interference, a plaintiff must establish "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Clemens* is clearly distinguishable here as it specifically involved the issue of whether pro-rating his bonus interfered with his FMLA rights.

Plaintiff has identified incidents where Defendants interfered with Plaintiff's FMLA rights.

 Here the Plaintiff  has proffered evidence of interference in that  he was asked to work while hospitalized  during his FMLA leave, when it benefitted the Defendants, but Defendants  failed to explore remote work or any other option to accommodate Plaintiff's continuing medical needs.. *See  Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016).  where the Court found that the "Plaintiff  had raised issues of material fact concerning her entitlement to leave[ for T.J]. that are sufficient to preclude dismissal of her claim for  FMLA interference.

## **DISPARATE TREATMENT**

"An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." (internal quotation marks omitted). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Vaughn v Empire City Casino at Yonkers*

*Raceway*, 2017 WL 3017503, citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

 Defendant erroneously interprets the allegation in paragraph 87 of the TAC, wherein Plaintiff alleges , the accommodations requested by Plaintiff were extended to favored disabled and nondisabled employees, including Jill Leonard Tavello, Brittney Tavello, Blake Leonard, Ann Salvino, Fred Salvino, Taihili Toppin Boyokea, Geraldine Toppin, Peter Gregory Michelle Molyneaux Larry Zimmerman, Michael Luboff  and Eddie Ottusch subjecting Plaintiff to disparate treatment by the Defendants.  At no point  in the TAC does  Plaintiff allege that the accommodation requested was to work from home. See Plaintiff's email of July 14, 2020, Requesting a two-day work week or something like it.   Repeatedly Plaintiff sought the Defendants to engage in the interactive process to determine what if any accommodation could be made. Plaintiff alleges that other employees both disabled and non-disabled did not receive an adverse employment action  not that they were allowed to work from home. Here, Plaintiff as the Plaintiff Reilly in Reilly v Revlon did not seek an extended leave, as noted .

Finally, the Second Circuit Court of Appeals has held that "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *" Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).*

## PLAINTIFF ADEQUATELY PLEADS FMLA RETALATION

Defendants cite *Majied V. New York City Dept. Of Education*, No. 16-Cv-5731 (Jmf) (S.D.N.Y. Feb. 13, 2020), which granted defendants motion to dismiss because Plaintiff could not establish the employers actions denied him a benefit under the FMLA….. However, Majied is clearly distinguishable here, because 1) it is irrefutable that asking a disabled person to work while out on disability leave and hospitalized, denies him the full benefit of leave under FMLA and  there,

the Plaintiff  alleges that the adverse job actions began "before she requested FMLA leave [and reasonable accommodation under the ADA], and because she relies only on temporal proximity to suggest retaliatory intent, her [FMLA and ADA] retaliation claim[s] fail[ ]."  Plaintiff in the case at bar pleads adverse job action occurred while out on FMLA and does not rely solely on temporal proximity.

In *Reilly v Revlon* 620 F.Supp.2d 524 *(2009)*  the Court held " There is temporal proximity between the receipt of the treatment notes and the adverse action" Here as in *Reilly,* there is temporal proximity between the Defendant's receipt of  the medical note dated September 14, 2020,  and 14 days later,  Defendant's termination  of Plaintiff dated September 28, 2020.


It is currently unclear whether Defendants' motivation for terminating Plaintiff's employment was based only on Plaintiff's request under the ADA for accommodation or whether Plaintiff's prior FMLA leave also played a role.

Defendants point out that the FMLA does not prohibit terminating employees while they are on leave, noting that Plaintiff must still show that her FMLA leave was causally related to the decision to terminate her. (Reply at 3-4); *see Akinfaderin v. W. P. Carey & Co. LLC*, No. 11-cv-3184, 2011 WL 6961403, at *6, 2011 U.S. Dist. LEXIS 150740 at *15 (S.D.N.Y. Dec. 28, 2011)

Defendants' sole stated reason for Plaintiff's  termination as stated in Defendant's  email of September 28, 2020,  was  that he had exhausted all of his administrative leave, including his FMLA leave. Hence, the but for causation, had Plaintiff not taken his leave, he would not have been terminated.

In *Meyers V. Medco Health Solutions, Inc.*, Court No. 09 Civ. 09216 (Rke) (S.D.N.Y. Mar. 31, 2015).  the Court found that  the Plaintiff had established a prima facie case of retaliation citing *Zann Kwan v. Andalex Group LLC, 737 F.3d 834 (2d Cir. 2013),* which held that the " the prima

facie case only requires a de minimis showing." *Zann Kwan* at 845. Here, the Defendants do not proffer any reason for terminating the Plaintiff, other than  that his administrative leave, including his FMLA leave  was exhausted.

### PLAINTIFF ADEQUATELY PLEADS "OPPOSED DISCRIMINATION"

A plaintiff engages in protected activity within the meaning of Title VII when he either "oppose[s] any practice made unlawful by Title VII," or "ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under Title VII." *Vaughn v Empire City Casino and Yonkers Raceway*, 2017 WL 3017503 ( S.D N.Y.(2017) (KMK) citing ." *Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015)* (internal quotation marks omitted). A plaintiff's complaint qualifies as protected activity so long as the plaintiff had "a good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (alteration and internal quotation marks omitted.) In Vaughn, this Court there stated that "There is no question, however, that Plaintiff's reports to Palmieri about Munroe's racially insensitive comments may qualify as protected activity." Vaughn at 21  *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1179–80 (2d Cir. 1996) (holding that a jury could conclude that a plaintiff had a good faith and reasonable belief that sexist comments made by a coworker were in violation of Title VII); *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 228 (E.D.N.Y. 2010) (holding that a plaintiff's complaint to a supervisor about a coworker's allegedly discriminatory remarks constituted protected activity)

In Vaughn, the Plaintiff identified only 3 instances wherein he engaged in protected activity by reporting bad behavior.  Plaintiff here has identified at least eleven instances and alleges discriminatory workplace environment riddled with systemic racism, sexism and antisemitism to which he consistently opposed.

Similar to the case at bar, the Court has held in *Bagley v JP Morgan Chase & Co, No 10 Civ 1592, (PGG) (SDNY July 12, 2012)* that " a reasonable jury could find that Bagley (the Plaintiff and a long standing employee)  was fired not because—after 27 years of superior performance and numerous promotions he suddenly and unreasonably began refusing to complete performance reviews for certain members of his staff, but rather in retaliation for his refusal to cooperate in a discriminatory scheme." (opposed discrimination )

"To establish the causation prong of a prima facie case, [the]plaintiff must be able to show that the retaliatory actions closely followed the protected activity o[r] that there was a reasonably close temporal proximity between the two." *Figueroa v. Johnson*, 109 F. Supp. 3d 532, 549 (E.D.N.Y. 2015) (italics and internal quotation marks omitted), *aff'd*, 648 Fed.Appx. 130 (2d Cir. 2016); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 613 (E.D.N.Y. 2010) ("[A] plaintiff can prove causation not only directly, by showing employer's retaliatory animus towards the plaintiff, but also indirectly, either by showing temporal proximity ..., or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." (internal quotation marks omitted)

 Plaintiff has shown plausible cause of action for both disparate treatment and his protected activity, which was ongoing over the course of his employment and too numerous to list at the pleadings stage. "A plaintiff need only plead . . . facts sufficient to state a claim to relief that is plausible on its face." See also,  <u>Horsting v St. John's Riverside Hospital SDNY (2018)</u>

Plaintiff has adequately pled that over the course of his 20-year employment he continually and repeatedly complained about the racist, sexist and antisemitic actions of Defendants. Plaintiff's last complaint of unlawful activity was March 2020, see Paragraph 41 of TAC. Six months between the protected activity and the adverse employment action under the unique

circumstances surrounding Plaintiff's disability and COVID's impact on the workplace should allow for an inference of causation, under the totality of the circumstances.

At all times, Plaintiff's good faith belief that Defendant's failure to maintain a safe work environment during the early days of COVID was an unlawful employment practice to which he opposed.

 "The law is clear that informal complaints to management about discriminatory activity fall within the 'opposition' component of the protected activity element." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 318–19 (2d Cir. 2018); *see also Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 418–19 (E.D.N.Y. 2017) ("The law also does not require that the employee file a formal complaint when opposing the discriminatory   practices—an informal complaint is sufficient.").

  "As protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)."

"As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII". Rice v Smithtown citing " *Galdieri-at 292*  .

**CONTINUING VIOLATION**

 "The 'continuing violation doctrine' applies where there is evidence of an ongoing discriminatory policy or practice."Antrobus v New York City Health and Hospitals Corporation 2021 WL 964438 (2021) citing . "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell* v. *Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Where such a continuing violation is shown, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id*.See Also  *Doe V. Suny Purchase College,* No. 7: 21-Cv-08417-Kmk-Ped (S.D.N.Y. Oct. 18, 2022) where this Court held  "a continuing violation  may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue  unremedied for so long as to amount to a discriminatory policy or practice."

## **CAUSATION**

"To establish the causation prong of a prima facie case, [the] plaintiff must be able to show that the retaliatory actions closely followed the protected activity o[r] that there was a reasonably close temporal proximity between the two. *Figueroa v. Johnson*, 109 F. Supp. 3d 532, 549 (E.D.N.Y. 2015)

In the context of a Title VII retaliation claim, a "protected activity is an action taken to protest or oppose statutorily prohibited  discrimination ."  The employee need not "establish that the conduct she opposed  was actually a violation of [Section 1981], but only that she possessed a good faith reasonable belief that the underlying employment practice was unlawful." *Galdieri-at, 292* . A plaintiff's opposition   may be pleaded with allegations of "informal protests

of  discriminatory employment practices.*" Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)*. Second, the employer must be aware that the employee engaged in protected activity. See, e.g., Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d at 14.

## DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED

Under Rule 12(f) "court[s] may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To prevail on a [Rule 12 (f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.*" In re Fannie Mae 2008 Sec. Litig., 891* F.Supp.2d 458, 471 (S.D.N.Y. 2012). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided"

"And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint-on the grounds that the material could not possibly be relevant-on the sterile field of the pleadings alone" *Lipsky v Commonwealth United Corp. 551 F.2d. 887,893 (2d Cir.1976)*

Motions to strike are disfavored and should be granted only if "there is a strong reason to do so." *Lipsky at  893* As such '[Motions to strike are viewed with disfavor and infrequently granted" *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710 (S.D.N.Y. 2019).

The allegations set forth in Paragraphs 46-59 of the TAC are  relevant and pertinent to illustrate plaintiff's concerns about the hostile racist, sexist and antisemitic work environment created by Defendants as well as the significant cause of  Plaintiff's work-related PTSD when Defendants required Plaintiff to discard human bones discovered near Defendants facility.

Most significantly, since the filing of the instant litigation to date, Defendant Leonard. has appeared favorably in the following media :Fox Business, NBC Connecticut, I-95 the Rock, Global Herald , CNBC,  Fox News, MSNBC, Yahoo Finance, AP Archive, Fox & Friends ,The Today Show, the Westport Journal, The New Canaan Patch, News 12 Bronx and more, clearly indicating that the allegations in Paragraphs  46 through  59 have not and likely will not have a prejudicial effect nor a scandalous impact on the Defendants.

To the extent that any of the allegations in this matter may be deemed unnecessarily harmful to the Defendants, Defendants may move to seal those aspects of the testimony and other relevant evidence.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Dismiss the Third Amended Complaint and to Strike paragraphs 46-59 should be denied in their entirety.

Dated:  Croton on Hudson, NY
        December 2, 2022


                                        HERTZ LEGAL P.C.

                                        Attorneys for the Plaintiff

                        By:     *Karen Mizrahi*

                                        503 Half Moon Bay Drive
                                        Croton on Hudson, NY 10520
                                        (914) 393-6971
                                        karen@hertzlegal.com